IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| A.T.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| MTR HOTELS, LLC, | ) | NO. _____ |
| | ) | |
| Defendant. | ) | (*Jury Trial Demanded*) |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW A.T.P. (hereinafter "Plaintiff"), by and through her undersigned counsel, in the above-captioned action, pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), hereby files her Complaint and alleges as follows:

1.

Given the nature of the case, A.T.P. is identified in this Complaint only by generic initials to prevent public disclosure of A.T.P.'s name. Plaintiff's counsel has either previously disclosed A.T.P.'s full name to defense counsel or will immediately upon identification of additional counsel. Upon information and belief, all parties consent to proceeding by using A.T.P.'s initials.[1]

## PARTIES, JURISDICTION, AND VENUE

2.

---

[1] Contemporaneously with her Complaint, Plaintiff filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include sex trafficking, are intimate and personal in nature, as well as for A.T.P.'s own personal safety.

Plaintiff is a citizen of the United States of America, is a resident of the State of South Carolina, and consents to the jurisdiction of this Court.

3.

At all times relevant to this complaint, Defendant MTR Hotels, LLC (hereinafter "Defendant") owned, managed, supervised, operated, oversaw, controlled the operation of, and/or was inextricably connected to the renting of rooms at the Days Inn located at 60 Roper Mountain Road, Greenville, South Carolina 29607 (hereinafter "Days Inn"), from which Defendant benefited financially.

4.

Defendant is a South Carolina limited liability company with its principal place of business at 60 Roper Mountain Road, Greenville, South Carolina, 29607. Service can be made on Defendant by serving its registered agent: Mitesh Patel, 109 Destination Boulevard, Anderson, South Carolina, 29621.

5.

Jurisdiction and venue in this Court are proper as to Defendant.

6.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a).

7.

Jurisdiction and venue in this Court are proper as to Defendant. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Greenville County, South Carolina, within the District of South Carolina, Greenville Division.

8.

Whenever reference is made in this complaint to any act, deed, conduct, and/or omission of the Defendant, the allegation is that the Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

**SEX TRAFFICKING ALLEGATIONS**

9.

Plaintiff was trafficked for sex with numerous other women at the Days Inn for approximately two (2) weeks, specifically including the date of March 21, 2011.

10.

Plaintiff's sex trafficker, Quintavious Obie, operated openly and brazenly at the Days Inn. He "recruited" other victims on the Days Inn premises and surrounding areas and then forced them into sex trafficking at the Days Inn.

11.

While Plaintiff was trafficked at the Days Inn, at least four (4) other female sex trafficking victims were present with the Plaintiff and trafficked for sex at the Days Inn. Plaintiff's sex trafficker rented at least two (2) to three (3) rooms to sell victims for sex at the hotel during this time period.

12.

Obie's sex trafficking venture at the Days Inn operated continuously for weeks in succession. Other victims of Obie had been trafficked for sex continuously for roughly a month at the Days Inn before Plaintiff arrived and was trafficked there for approximately two weeks.

13.

In 2019, Plaintiff's trafficker was convicted of sex trafficking for "lur[ing] young women from rural areas in South Carolina to Atlanta," where Obie trafficked the young women for sex. Plaintiff was one such young woman, trafficked in both South Carolina at the Days Inn and later in Georgia.[2]

14.

While she was trafficked at the Days Inn, Plaintiff and the other women entrapped by Obie exhibited numerous well-known and visible signs of a sex trafficking victim in the common areas of the Days Inn, of which Defendant knew or should have known, including her age and inappropriate appearance, visible intoxication, injuries, no control of or possession of money, loitering, soliciting male patrons, monitoring and control by her trafficker, excessive requests for towels and linens in her and the other rooms occupied by sex trafficking victims and traffickers, and multiple men per day, who were not guests of the hotel, coming and going at all hours from the same room(s) without luggage or personal possessions.

15.

Plaintiff and other trafficking victims frequently appeared throughout the hotel and on the hotel premises and approaches dressed in a sexually explicit manner wearing very little clothing while walking the hotel premises.

16.

While Plaintiff was trafficked at the Days Inn, her trafficker paid cash for the rooms at the Days Inn where Plaintiff was forced to perform commercial sex acts.

---

[2] Atlanta Sex Trafficker Sentenced to 21 Years, Department of Justice, April 23, 2019 https://www.justice.gov/usao-ndga/pr/atlanta-sex-trafficker-sentenced-21-years.

17.

Plaintiff's trafficker was not subtle in his trafficking. Obie was flashy in his appearance, acting loud and flamboyant. At the Days Inn he was often surrounded by several young women, all acting subservient to him. He was frequently violent with the women he trafficked, and with sex buyers at the hotel. Some of these violent incidents were seen and heard by Days Inn employees.

18.

Staff and customers at the Days Inn saw that the rooms in which Plaintiff and other sex trafficking victims were trafficked showed signs of sex trafficking, contained sex and drug paraphernalia, excessive used condoms in the room, and the rooms had an unclean smell.

19.

While Plaintiff was trafficked at the Days Inn, she and other sex trafficking victims frequently requested excessive numbers of towels and linen from the hotel. Each of the five victims had to walk to the front desk to request additional towels multiple times each day.

20.

While Plaintiff was trafficked at the Days Inn, hotel staff observed her, the other sex trafficking victim, and their sex trafficker at the hotel. The victims were required to behave in submissive manner around Plaintiff's sex trafficker, another common sign of sex trafficking.

21.

Plaintiff's trafficker frequently visited the front desk of the Days Inn and interacted with hotel employees and management while buyers were in the room having sex with Plaintiff and other sex trafficking victims.

22.

On information and belief, employees at the Days Inn accommodated and were familiar with Plaintiff's trafficker, due to his having stayed at the Days Inn while trafficking other victims there in the weeks preceding the sex trafficking of Plaintiff.

23.

While she was trafficked at the Days Inn, Plaintiff and the other four women being trafficked at the hotel were each forced to see approximately six (6) to ten (10) male customers a day at the Days Inn. Thus, the following was visible to employees at the Days Inn every day Plaintiff was trafficked there; each day, as it had been for a month before, thirty (30) to fifty (50) men, one at a time, showed up at the Days Inn with no luggage or belongings, each briefly visiting the same few rooms rented with cash by a flamboyant and loud man living at the hotel with five young, subservient, scantily-dressed women who requested an inordinate number of towels and linens from the hotel and whose rooms were full of used condoms and drug paraphernalia. Defendant knew or should have known that this scene, the visible indications of the rooms, the trafficker, the victims, and the number of daily male visitors to the sex trafficker's rooms with no possessions, was obviously indicative of sex trafficking.

24.

On March 21, 2011, Obie attacked and fought a sex buyer in the parking lot of the Days Inn after the buyer attempted to leave without paying for the sex he purchased from Plaintiff. The police came and arrested a different victim of Plaintiff's sex trafficker for prostitution following this altercation.

**DEFENDANT'S KNOWLEDGE AND LIABILITY UNDER THE TVPRA**

25.

Sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act. 18 U.S.C. § 1591(a), *et seq*. Plaintiff was a victim of sex trafficking at Defendant's hotel at all times relevant to this Complaint.

26.

Sex trafficking is prevalent at hotels and motels throughout the United States due to many factors, including, but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), and the ability to maintain anonymity, privacy, and discretion. Indeed, a 2012 report revealed that sixty-three percent of (63%) of human trafficking incidents occur in hotel/motels.[3] Furthermore, in 2014 ninety-two percent (92%) of the calls the National Human Trafficking Hotline received from hotels/motels reported sex trafficking.[4]

27.

Hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

---

[3] Sarkisian, M., *Adopting the Code: Human Trafficking And The Hospitality Industry*, 15 CHR 15 (2015), at 3, *available at*
https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.
[4] *Id*.

28.

The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attended with booking rooms with hotels/motels – they know it is unlikely they will be disturbed. In fact, hotels provide them signs to hang on their doors to ensure non-disturbance.

29.

At all material times, Defendant had knowledge of the prevalence of sex trafficking at hotels and motels throughout the United States and globally, including the factors identified in the preceding paragraphs, yet Defendant failed to prevent and/or take steps to prevent this horrific criminal conduct from occurring at its hotel, so that it could continue earning a profit at the expense of human life, human rights, and human dignity.

30.

At all times relevant hereto, Defendant owned, operated, maintained, controlled, and managed the Days Inn, directly employing all employees at the hotel.

31.

As part of its knowledge of sex trafficking, Defendant knew or should have known that sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will at hotels and motels, including the Days Inn.

32.

Indeed, Plaintiff's sex trafficker chose the Days Inn as the venue to conduct his sex trafficking activities because the hotel was well known for crime and because he was permitted by the hotel to sell multiple young women for sex at the hotel for weeks at a time.

33.

The passage of the TVPRA in 2008, as well as countless other legislative initiatives, put Defendant on notice of the high likelihood of these illegal acts occurring at its hotel, which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

34.

Defendant knew or should have known, at least by 2011, that Greenville was a hub for sex trafficking and that the crime was prevalent in the city. Moreover, Greenville is on the I-85 corridor and is in close proximity to significant national hubs of sex trafficking such as Atlanta and Charlotte. Moreover, in 2011 South Carolina was rated by the Shared Hope International's annual report as being a failing state against the fight against sex trafficking.[5]

35.

Defendant knew or should have known, at least by 2011, that its hotel was frequently used by sex traffickers given that the hotel was commonly visited by law enforcement responding to reports of prostitution and other criminal behavior commonly associated with prostitution and sex trafficking occurring at the hotel or on hotel property. Furthermore, around the time of Plaintiff's trafficking at the Days Inn, high-profile sex trafficking busts by law

---

[5] <u>Protected Innocence Initiative South Carolina Report Card</u> Shared Hope (March 4, 2021), http://sharedhope.org/PICframe2/reportcards/PIC_RC_2011_SC.pdf

enforcement were common in the Greenville area, specifically the general area of Defendant's hotel.

36.

Defendant knew or should have known, based on a combination of well-documented indicators noted above, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the Days Inn because of its misfeasance and nonfeasance.

37.

Defendants knew or should have known of the Department of Homeland Security ("DHS") guidelines to identify warning signs that indicate the presence of sex trafficking on the hotel premises such as:

- a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- b) persons who lack freedom of movement or are constantly monitored;
- c) persons who have no control over or possession of money or ID;
- d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;
- e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;
- f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;
- g) extended stay with few or no personal possessions in the room;
- h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion,

       etc.);

i) the same person reserves multiple rooms;

j) a room is rented hourly, less than a day, or for an atypical extended stay;

k) attempts to sell items to or beg from patrons or staff;

l) cars in the parking lot regularly parked backward, so the license plates are not visible;

m) loitering and solicitation of male patrons;

n) waiting at a table or bar and picked up by a male (trafficker or customer);

o) persons asking staff or patrons for food or money; and

p) persons taking cash or receipts left on tables.

38.

At all material times, Defendant, individually and/or by its respective actual or apparent agents, operators, servants, and/or employees, aided, concealed, confined, benefitted, and profited from sex trafficking and other criminal activity that was occurring at the Days Inn, including to Plaintiff.

39.

At all material times, Defendant, individually and/or by its respective actual or apparent agents, operators, servants, and/or employees, harbored human traffickers and sex trafficking victims at the Days Inn and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the Days Inn, including to Plaintiff.

40.

At all material times, Defendant, individually and/or by its respective actual or apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the Days Inn, failed to ensure the Days Inn Hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking, at the Days Inn.

41.

As a result of Defendant's failure to act and its intentional and negligent operations, Defendant allowed the Days Inn to be a venue for sex trafficking and other unlawful conduct, including to Plaintiff.

42.

While Defendant profited from the rental and other fees obtained at the Days Inn, Plaintiff was being exposed to continuous and repeated dangerous conditions at the Days Inn as a sex slave that resulted in her confinement, bodily injuries, emotional distress, mental harm and anguish among other damages in March 2011.

43.

Before and during March 2011, Defendant was on notice of the prevalence of sex trafficking at the Days Inn and failed to take adequate steps that would have prevented its occurrence.

44.

Before and during March 2011, Defendant failed to implement sufficient educational and training programs on sex trafficking within the hotel, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the Days Inn.

45.

Before and during March 2011, Defendant knew or should have known that Plaintiff was being trafficked for sex at the Days Inn but failed to act upon the obvious signs alerting it to the crimes taking place at the Days Inn, and from which it benefitted.

46.

Defendant had actual and constructive knowledge of sex trafficking and other criminal activity existing on the property and in the surrounding area prior to Plaintiff's sex trafficking. Defendant knew or should have known of violent and other crimes frequently adjacent to sex trafficking occurring on their premises and approaches. Furthermore, it appears this behavior and conduct occurring at Defendant's hotel is ongoing and as prevalent as it was in 2011 as evidenced by recent hotel reviews, including a May 2019 review stating:

> "Worst place ever the manager is rude. The rooms are nasty. I will [n]ever st[a]y here again ***there a hookers all over and the staff don't care. The are [people] doing drugs right out in the open. [People] selling drugs rights out in the open***. I had my kids here will never stay at this place ag[a]in[.]"

A response to this review was posted by "GenManDaysInn, General Manager at Days Inn by Wyndham Greenville" on May 12, 2019.

47.

Defendant knew or should have known that it permitted, harbored, facilitated, and participated with Plaintiff's trafficker in the ongoing sex trafficking venture at the Days Inn whereby Plaintiff was routinely and continually sold for sex at the hotel and where she was seriously and permanently injured thereby.

### COUNT I
### STATUTORY LIABILITY
### 18 U.S.C. § 1595

48.

Plaintiff incorporates Paragraphs one (1) through forty-seven (47) as if fully restated herein verbatim.

49.

Plaintiff is a victim of sex trafficking withing the meaning of the TVPRA, 18 U.S.C. §1595(a), and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

50.

In violation of the TVPRA, 18 U.S.C. § 1595(a), Defendant knowingly benefitted from participation in a venture that Defendant knew or should have known engaged in acts in violation of the TVPRA.

51.

Defendant knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the Days Inn, including a percentage of the revenue generated for the rate charged on the rooms in which Plaintiff was trafficked.

52.

Defendant participated in a sex trafficking venture by providing to Plaintiff's trafficker, for a fee, the necessary venue for Plaintiff's sex trafficking.  In the course of this venture, multiple men paid to have sex with Plaintiff and at least four (4) other victims at the Days Inn on a daily basis for one (1) to two (2) weeks. Defendant had knowledge of the same conduct occurring at the hotel with the four other victims for the month preceding Plaintiff's arrival. Moreover, Defendant has benefitted by maximizing profits on an ongoing basis as a result of their acts and/or omissions by providing a safe haven for traffickers by maintaining the loyalty of the segment of their customer base that seeks to participate in the illegal sex trade.

53.

The venture in which Defendant participated was in or affecting interstate commerce.

54.

Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant, their agents and representatives, had the opportunity to observe Plaintiff at the hotel, with and without her trafficker, the signs of sex trafficking exhibited by Plaintiff, her trafficker, other victims, the rooms in which she was trafficked, and the dozens of adult male buyers that came Plaintiff's rooms each day.

55.

Defendant knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant, its agents and representatives knew or should have known that other sex trafficking and sex crimes were frequently occurring at the hotel before Plaintiff was trafficked for sex at the Days Inn.

56.

Defendant is directly and vicariously liable under § 1595(a) for the actions of their agents and representatives.

57.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this sex trafficking venture.

58.

Defendant is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

59.

As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages by the acts discussed in this count.

## DAMAGES

60.

Plaintiff incorporates Paragraphs one (1) through fifty-nine (59) as if fully restated herein verbatim.

61.

As a proximate and foreseeable result of the Defendant's violations of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under federal law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under South Carolina law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under South Carolina and federal law, including, but not limited to:

    a)    Personal injuries;

    b)    Past, present and future conscious pain and suffering;

    c)    Loss of enjoyment of life;

    d)    Medical expenses;

    e)    Mental anguish and emotional distress;

    f)    Loss of past, present, and future wages;

g)   Incidental expenses;

h)   All special, compensatory, economic, punitive, and other damages permissible under South Carolina law and Federal law; and

i)   Consequential damages to be proven at trial.

62.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendant and its employees were reckless and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

63.

Defendant is jointly and severally liable for the damages arising from the indivisible injuries it caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

64.

Defendant is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Federal and South Carolina statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendant for the following:

a)   Process issue as provided by law;

b)   Plaintiff be awarded actual damages in amounts to be shown at trial from the Defendant;

    c)      Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

    d)      Plaintiff be granted a trial by jury; and

    e)      Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 5th day of March, 2021.

                              Respectfully submitted,

                              /s/ Edward "Ted" R. Corvey, III
                              Edward "Ted" R. Corvey, III
                              Fed. Bar No.: 13042
                              South Carolina Bar Number: 101454
                              ted@corveylawfirm.com

**CORVEY LAW FIRM, LLC**
815 Savannah Highway, Suite 201
Charleston, South Carolina 29407
Phone: (843) 625-8600
Facsimile: (843) 625-8601

                              /s/ T. Richard Waring, II
                              T. Richard Waring, II
                              Fed. Bar No.: 13292
                              South Carolina Bar No.: 100465
                              richard@richardwaringlaw.com

**LAW OFFICE OF RICHARD WARING, LLC**
192 East Bay Street, Suite 202
Charleston, South Carolina 29401
Phone: (843) 823-7955
Facsimile: (803) 973-3265

                              ***ATTORNEYS FOR THE PLAINTIFF***

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing *Complaint for Damages* has been prepared with one of the following font and point selections approved by the Court in LR 1.05. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 12-point size.

Respectfully submitted,

/s/ Edward "Ted" R. Corvey, III
Edward "Ted" R. Corvey, III
Fed. Bar No.: 13042
South Carolina Bar Number: 101454
ted@corveylawfirm.com

**CORVEY LAW FIRM, LLC**
815 Savannah Highway, Suite 201
Charleston, South Carolina 29407
Phone: (843) 625-8600
Facsimile: (843) 625-8601

/s/ T. Richard Waring, II
T. Richard Waring, II
Fed. Bar No.: 13292
South Carolina Bar No.: 100465
richard@richardwaringlaw.com

**LAW OFFICE OF RICHARD WARING, LLC**
192 East Bay Street, Suite 202
Charleston, South Carolina 29401
Phone: (843) 823-7955
Facsimile: (803) 973-3265

*ATTORNEYS FOR THE PLAINTIFF*